UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH,

                Plaintiff,

-against-

BRADLEY PARKER,

                Defendant.

24-cv-4324 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

    The National Bank of Kuwait, S.A.K.P., New York Branch (NBK) brings this suit to enforce an unconditional guaranty by *pro se* defendant Bradley Parker to pay the debt of a borrower to which the bank loaned over $50 million. For the following reasons, NBK's motion for summary judgment is GRANTED.

## BACKGROUND

    NBK is a "banking corporation organized under the laws of Kuwait, acting through its New York branch." Dkt. 25 ¶ 3. On May 23, 2018, NBK entered into a loan agreement with Galleria 2425 Owner, LLC, under which NBK agreed to loan Galleria $51,675,000 for Galleria to purchase property in Houston, Texas. *Id.* ¶ 4. Galleria "executed a promissory note in the principal amount of $51,675,000," secured by a Deed of Trust on the property. *Id.* ¶¶ 5–6. The same day, defendant Bradley Parker "executed an unconditional personal guaranty . . . to induce [NBK] to make the [l]oan to [Galleria]." *Id.* ¶ 7; *see also* Dkt. 25-4. Parker "absolutely, unconditionally and irrevocably guarantee[d]" to NBK "the full and prompt repayment" of "[t]he entire Debt" if, among other things, Galleria "commences a voluntary bankruptcy." Dkt. 25-4 § 2(b)(i). "Debt" is defined under the loan agreement as "the outstanding principal amount set forth in, and evidenced by, this Agreement and the Note, together with all interest accrued and unpaid thereon and all other sums due to Lenders in respect of the Loan under the Note, this Agreement, the Deed of Trust or any other Loan Document." Dkt. 25-1 § 1.1. Parker also guaranteed the payment of "all actual costs and expenses, including, without limitation, reasonable fees, disbursements and out-of-pocket reasonable expenses of attorneys and expert witnesses, incurred by [NBK] in enforcing [NBK's] rights under" the guaranty. Dkt. 25-4 § 2(d). Parker waived "any and all defenses of any and every kind to any action or proceeding brought to enforce th[e] [g]uaranty," aside from "the single defense that [Parker] or [Galleria] has actually paid the [g]uaranteed [a]mount." *Id.* § 5(c).

    After Galleria defaulted, NBK noticed the Texas property for foreclosure. Dkt. 25 ¶ 35 & n.1. "On July 5, 2023, minutes before a . . . foreclosure sale, [Galleria] voluntarily filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas." *Id.* ¶ 35.

After the bankruptcy court dismissed the proceeding on November 1, 2023, NBK re-noticed the property for foreclosure and scheduled the sale for December 5, 2023. *Id.* ¶¶ 36–37. The day of the sale, Galleria again filed for bankruptcy. *Id.* That bankruptcy proceeding remains pending. *Id.* ¶ 38.

On April 30, 2024, NBK sued Parker in New York state court, seeking to enforce the guaranty. Dkt. 7-2. NBK filed a motion for summary judgment in lieu of complaint pursuant to N.Y. C.P.L.R. § 3213. *See id.* On June 3, 2024, Parker removed the case to federal court. Dkt. 1. "[U]pon removal, the C.P.L.R. [§] 3213 motion for summary judgment in lieu of complaint was converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." *UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *2 (2d Cir. June 27, 2022).

## LEGAL STANDARDS

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986)). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." *Id.*

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but 'the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)).

## DISCUSSION

The guaranty is governed by New York law. Dkt. 25-4 § 18. Under New York law, NBK "must prove 'the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty.'" *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 84 (N.Y. 2015) (citation omitted). "Thereafter, 'the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense.'" *Id.* (citation omitted). "Ultimately, to prevail on its motion for summary judgment," NBK "must demonstrate that there are no genuine disputes surrounding any of the facts that are material to these . . . requirements." *White Oak Global Advisors, LLC v. Clarke*, 2025 WL 880542, at *3 (S.D.N.Y. Mar. 21, 2025) (citation omitted).

NBK has satisfied its initial burden. It is undisputed that Galleria filed for bankruptcy. The guaranty unambiguously provides that, if Galleria files for bankruptcy, Parker owes NBK "the full and prompt repayment" of Galleria's "entire Debt." Dkt. 25-4 § 2(b)(i). NBK introduced evidence that, as of October 25, 2024, the total amount owed to NBK is $38,200,623.26, which consists of the unpaid principal and interest, less $27,000,000 based on the bankruptcy court's sale of the

property. Dkt. 25 ¶¶ 48–49; Dkt. 25-5; Dkt. 25-6. Parker doesn't dispute that he has failed to fully and promptly repay this debt, as required by the guaranty.

NBK has also demonstrated an absence of any evidence of a viable defense. Parker alleges that "[b]orrower states that it has paid." Dkt. 30 at 19. But he points to no admissible evidence to back up this conclusory assertion, and certainly no evidence that the debt was actually paid. He also argues that he can't be held liable for the debt because he "previously separated from" Galleria. *Id.* at 1. The plain text of the guaranty, however, doesn't premise Parker's obligations on his continued employment for the LLC. He also contends that "after the loan was closed [he] entered into an agreement with [Galleria's principal, Ali Choudhri], in which Choudhri became the beneficial owner of Parker's interest." *Id.* But the only evidence that he points to in support of this argument is an internal NBK email that does not mention Parker and that merely apprises the recipient of a pending offer made by Choudhri to purchase a retail chain. Dkt. 31 at 7. Parker also doesn't seek additional time for discovery on these or any other matters or explain what missing facts might shore up his arguments. *See* Fed. R. Civ. P. 56(d) (motion may be deferred "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition").

Finally, Parker argues that Galleria and NBK entered into a settlement agreement that expressly released Parker as guarantor. *See* Dkt. 30 at 2. In support, Parker attaches the confidential settlement agreement, which indeed defines the "Galleria Released Parties" to include "guarantors (including the Guarantor under the Loan Agreement)." Dkt. 31 at 8. NBK concedes that Parker "would therefore have been entitled to receive a release if the conditions precedent to the release of the Galleria Released Parties were satisfied." Dkt. 32 at 3. However, NBK explains that the release was contingent upon NBK's receipt of a payment from Galleria, which never arrived. Specifically, section 4.3(a) of the settlement agreement provides that

> *Effective upon NBK's receipt of the Settlement Payment or the Purchase Option Payment*, NBK RELEASES, ACQUITS AND FOREVER DISCHARGES the Galleria Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims or the Lawsuit.

Dkt. 31 at 14 (emphasis added). NBK never received a settlement payment or purchase option payment, so it says that the release was never effective. Dkt. 32 at 4; Dkt. 33 ¶ 5. Parker doesn't dispute that Galleria never made these payments, but he says that "[t]he release of the Choudhri Parties was effective immediately and did not depend upon any performance under the agreement."[1] Dkt. 35 at 2.

---

[1] Parker makes this argument in an unauthorized surreply, but the Court nonetheless considers it because of his *pro se* status.

The Court disagrees. The settlement agreement, which is governed by Texas law, says that NBK's release of the Galleria Released Parties is "[e]ffective upon" the receipt of certain payments. Dkt. 31 at 14, 18. Under Texas law, "[a] condition precedent is 'an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998)). The contract unambiguously states that NBK's release of Parker is "[e]ffective upon" a certain event—the receipt of the settlement or purchase option payment. *See Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) ("[T]he inclusion of words such as 'if,' 'provided,' 'on condition that,' or some similar phrase of conditional language indicate that the parties intended there to be a condition precedent." (internal quotation marks and citation omitted)). Because this condition wasn't met, the release didn't become effective, which means that Parker can't enforce the release against NBK here.

Parker also argues that there is "active litigation in Texas whereby Choudhri is claiming [NBK] breached the Settlement Agreement and took actions that negatively affected Choudhri's ability to honor the payment obligations under the [s]ettlement [a]greement." Dkt. 35 ¶ 2. Parker says that "Choudhri will either prevail in the pending appeal or it will be confirmed that [Parker] fell within the definition of the Choudhri Released Parties found in the Confidential Settlement Agreement." Dkt. 39 at 3. But NBK concedes that Parker falls within the definition of the Choudhri Released Parties, and Parker doesn't explain how Choudhri's success on his pending appeal would impact this litigation. Regardless, to the extent Parker argues that this Court should stay this proceeding pending the outcome of the Texas litigation, the motion is denied.

"Courts weighing motions to stay consider four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Whitehaven S.F., LLC v. Spangler*, 2014 WL 5510860, at *1 (S.D.N.Y. Oct. 31, 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The Court has considered each of these elements and a stay is unwarranted. Likelihood of success is a predominant consideration. Multiple courts in Texas have rejected Choudhri's claim that NBK breached the settlement agreement, and there is no explanation of the winning argument Choudhri has on his pending appeal at the Fifth Circuit. *See* Order Dismissing Case at 3, *Choudhri v. Nat'l Bank of Kuwait, S.A.K.P., New York Branch*, No. 24-3120 (Bankr. S.D. Tex. Aug. 13, 2024), Dkt. 25 (noting that whether NBK breached the settlement agreement "has already been ruled on by this Court, in the underlying bankruptcy case, which agreed with a previous state court ruling" that "NBK did not breach the [agreement]"); Memorandum and Order at 3–4, *Choudhri v. Nat'l Bank of Kuwait, S.A.K.P., New York Branch*, No. 24-cv-3198 (S.D. Tex. Feb. 19, 2025), Dkt. 22 (holding that "[Choudhri] offers no reason to believe that the Bankruptcy Court erred" in dismissing his case).

Moreover, Choudhri has a long history of vexatious litigation tactics. *See* Memorandum Opinion at 17 n. 48, *In re Galleria 2425 Owner, LLC*, No. 23-34815 (Bankr. S.D. Tex. June 22, 2024), Dkt. 565 (detailing Choudhri's long litigation history against NBK and others); Order

4

Disallowing Proof of Claim and Referral to United States Attorney at 3, *In re Galleria 2425 Owner, LLC*, No. 23-34815 (Bankr. S.D. Tex. Sept. 9, 2024), Dkt. 717 (referring Choudhri to the United States Attorney for investigation); Memorandum Opinion at 2, *In re Galleria 2425 Owner, LLC*, No. 23-34815 (Bankr. S.D. Tex. Dec. 6, 2024), Dkt. 870 (characterizing Choudhri as a "vexatious" litigant).

Finally, Parker appears to argue that this dispute should be litigated in Texas state court, given that the settlement agreement designates "Harris County District Court, Houston, Texas," as the "exclusive jurisdiction for any dispute based on or arising from" the settlement agreement. Dkt. 39 at 2–3; Dkt. 31 at 18. But NBK's claim against Parker arises from the guaranty, not from the settlement agreement, so this argument fails. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007) ("Because the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore 'arise out of,' the contract.").

In sum, there is no "genuine dispute[] surrounding any of the facts that are material" to NBK's claim for payment on the guaranty, *White Oak Global Advisors*, 2025 WL 880542, at *3 (citation omitted), so summary judgment is warranted.

## CONCLUSION

NBK's motion for summary judgment is GRANTED. By June 20, 2025, the parties should jointly propose a date for a hearing to determine the total amount due under the relevant agreements. If the parties can resolve this issue without further intervention from the Court, the parties should apprise the Court by the same date.

The Clerk of Court is directed to terminate Dkt. 24.

SO ORDERED.

Dated: June 4, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge